UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS DOTY,

          Plaintiff,

v.

PPG INDUSTRIES, INC.,

          Defendant.

CASE NO. C14-5704BHS

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Thomas Doty's ("Doty") motion for summary judgment (Dkt. 81) and Defendant PPG Industries, Inc.'s ("PPG") motion for summary judgment (Dkt. 84). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On September 5, 2014, Doty filed a complaint against PPG asserting claims for (1) age discrimination in violation of the Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60, and the Age Discrimination in Employment Act ("ADEA"), 26 U.S.C. §§ 621-634; (2) for retaliation in violation of the WLAD and ADEA; (3) wrongful constructive termination in violation of the WLAD and ADEA; and (4) negligent and intentional infliction of emotional distress. Dkt. 1.

ORDER - 1

1    On October 1, 2014, Doty filed a First Amended Complaint ("FAC") asserting the
2 same causes of action. Dkt. 9. On October 14, 2016, PPG answered asserting seventeen
3 defenses and affirmative defenses. Dkt. 11.

4    On July 21, 2016, Doty filed a motion for summary judgment (Dkt. 81) and PPG
5 filed a motion for summary judgment (Dkt. 84). On August 11, 2016, both parties
6 responded. Dkts. 90, 92. On August 12, 2016, Doty replied. Dkt. 98. On August 19,
7 2016, PPG replied. Dkt. 100.

## II. FACTUAL BACKGROUND

9    PPG is a global supplier of a variety of paint products, including coatings for
10 aluminum extrusion products, and hired Doty in 1974. Dkt. 93, Declaration of Thomas
11 Doty ("Doty Decl."), ¶ 3. Doty began his career as a factory worker mixing paint and, in
12 2004 after several promotions, became the Regional Sales Manager for the Western
13 Region of the United States. *Id*. On at least two occasions, PPG offered Doty an early
14 retirement package, but Doty declined and stated his intention to work for PPG until he
15 was 66. *Id*., ¶ 4.

16    On September 6, 2011, PPG manager Jeff Shaffer reassigned a number of Doty's
17 accounts to Natalie Caratelli, who was 26 years old at the time. *Id*., ¶ 5. Doty claims that
18 the accounts generated over $2,000,000 in revenue for PPG. *Id*.

19    At the end of 2011, Doty's yearly performance evaluation resulted in Shaffer
20 placing Doty on probation. In the evaluation, Schaffer stated as follows:

21      [Doty's] reporting of sales activities has been dismal. He has only
        completed 25% of the required weekly reports and his executive summary
22

>for our largest extrusion customer, SAPA, is inaccurate and poorly documented.
>
>[Doty] has not displayed a level of behavior that would be expected of a veteran sales executive. His outlook calendar displayed an anemic level of customer activity and was centered around one local account. I am very disappointed with his overall commitment and work ethic.

Dkt. 85, Declaration of Jennifer Pirozzi, Exh. 3. On January 11, 2012, Shaffer placed Doty on a 90-day Performance Improvement Plan ("PIP"). *Id*., Exh. 4. The PIP stated that if Doty did not meet its requirements within 90 days, he would be terminated. *Id*. The PIP also stated that even if Doty met its requirements, he would be expected to consistently maintain stated standards; otherwise, he would be terminated. *Id*. The PIP was to be monitored by Shaffer through weekly meetings with Doty. *Id*. At some point, Shaffer and Senior Human Resources Manager Rett Wyman met with Doty regarding the PIP. Doty contends that Wyman accused Doty of being "lazy," "a slacker," and "on cruise control." Dkt. 92 at 11 (citing Dkt. 94-1, Doty Deposition ("Doty Dep.") at 52:17–18). Doty's deposition, however, does not show that Doty attributed these actual comments to Wyman, and instead reflect Doty's general perception of a poor yearly evaluation and being placed on a PIP. *See id*.

In February 2012, Doty submitted a rebuttal to Schaffer regarding the PIP. Dkt. 94-16. Doty stated that he did not understand why Schaffer accused Doty of being "lazy," "a slacker," and "on cruise control." *Id*. at 2. Doty then provided detailed responses to each criticism identified in the PIP. *Id*. at 2–5. Doty closed the letter by stating as follows: "you tell me that my highest PC accounts ($1.9MM) are being removed from me and that I am to identify a minimum of $2MM in new business targets

ORDER - 3

(in a very tight economy) and am on a 90-day probation, feels like I am being set up to fail." *Id*. at 5.

On March 23, 2012, Shaffer was reassigned and Chancey Hagerty, Regional Director of Building Products, became Doty's supervisor. Doty Decl. at ¶10. When that happened, Doty provided Hagerty with his detailed rebuttal to the PIP. *Id*. Hagerty, like Shaffer, did not address the rebuttal, nor did he assume a visible role in overseeing the PIP and interacting with Doty. *Id*. On or about April 11, 2012, 90 days passed and the PIP expired by its own terms. *Id*. On May 16, 2012, Hagerty confirmed that Doty had successfully completed the PIP. Doty Dep. at 113:14–114:13.

In September 2012, PPG assigned Brian Knapp to manage the newly established industrial coating building products segment, which resulted in Knapp becoming Doty's supervisor. Doty contends that Knapp had a history of discriminatory age-related comments and mistreating employees based on their age. Dkt. 84 at 6. For example, Knapp allegedly told an employee that he could "hire kids half your age and pay them half the money to do the same job you are doing." *Id*. Doty also contends that coworker Frank Mento was "aware that Doty was targeted by Knapp and Hagerty." *Id*. While Doty's attorney phrases the accusation in such a way as to imply targeting for age discrimination, the actual transcript reflects that Mento stated that Knapp and Hagerty were "riding [Doty] over some sales numbers" on one phone conference. Dkt. 94-29 at 8:16–24.

In October 2012, after supervising Doty for a month, Knapp noticed Doty's performance deficiencies. Dkt. 85-6, Knapp Deposition ("Knapp Dep.") at 85:12–86:13.

The deficiencies included, among other things, lack of initiative in sales pipeline growth, poor communication, and lack of communication and accountability regarding territory performance and sales metrics. *Id.* Consistent with these observations, in Doty's mid-year performance evaluation, Knapp expressed that he was "very concerned" about Doty's pipeline, his lack of planning, his unnecessary travel, his lack of focus on sharegain, and failure to communicate at the quality and quantity levels expected from someone in his position. Dkt. 87-2.

On October 24, 2012, Knapp placed Doty on another PIP. Dkt. 94-17. Although the prior PIP stated that Doty would be terminated if future performance issues arose, Knapp placed Doty on another PIP because he "was being fair to [Doty]." Knapp Dep. at 109:2–14. PPG asserts that Doty's performance did not improve as reflected in his annual performance review for 2012:

> 2012 has been a challenging year for [Doty]. [Doty] has struggled financially at his assigned accounts. His **volume decreased 6.4%** because he had no new Sharegain. His **sales decreased 2.2% with PC $ flat at .9% due to PC% improvement of 3.2%.** It was a weak financial year for [Doty] and his financial performance was **driven by No New Business**, price actions, negative RM impacts, negative Conv Costs, but he did get a minor positive lift from product mix change.

Dkt. 85-3 at 1. Doty counters these assertions and claims that, in late 2012 and early 2013, he "was consistently at or near the top of his group for potential new sales." Dkt. 92 at 14 (citing Dkt. 94-22)[1]. Doty also contends that "his 2012 and 2013 pipeline was

---

[1] Doty cites a spreadsheet that is not self explanatory, but PPG fails to contest Doty's assessment of the spreadsheet.

ORDER - 5

consistently ahead of Heidi Abrams, a much younger employee in his sales group who was not on placed on a PIP." *Id*.

When Mr. Doty's performance had not improved by the end of the 90-day period, Knapp recommended to his supervisor, Hagerty, that PPG terminate Doty's employment. Knapp Dep. at 56:11–22, 62:12–25, 124:5–15. On January 2, 2013, a PPG internal email discussed the amount PPG would offer Doty in a severance package. Dkt. 94-18. PPG asserts that

> because Mr. Doty would be eligible for a richer separation benefit if PPG discharged him for job elimination instead of poor performance, and knowing it could feasibly eliminate Mr. Doty's position by the end of 2013, PPG opted to wait until later in the year to terminate Mr. Doty's employment.

Dkt. 84 at 6–7 (citing Knapp Dep. at 124:24–125:5, 204:24–205:6).

On October 14, 2013, Doty received a phone call from Wyman informing Doty that he was "being retired, per Chancey Hagerty." Doty Dep. at 145:06-24. In November 2013, PPG terminated Doty. At the time of his termination, Mr. Wyman told Doty that his performance had been unacceptable and PPG was eliminating his job. Wyman Dep. at 107:21-108:6. PPG asserts that "Doty's job was, in fact, eliminated after his termination," it "assigned [Doty's] job duties to other employees," and that "it did not hire anyone to replace [Doty]." Dkt. 84 at 6 (citing Wyman Dep. 92:21-93:4; Knapp Dep. at 141:9–23, 195:21–22). Contrary to these assertions, Doty asserts that "Doty's job duties were reassigned to Bob Kelly" and that "Kelly is 46 year-old sales representative whom PPG had hired in July 2013, after it had decided to eliminate Doty's position." Dkt. 92 at 15 (citing Knapp Dep. at 141:09–142:06; Dkt. 94-21).

## III. DISCUSSION

PPG moves for summary judgment on all of Doty's claims, and Doty moves for summary judgment on all of PPG's defenses.

### A.     Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

1 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual
2 issues of controversy in favor of the nonmoving party only when the facts specifically
3 attested by that party contradict facts specifically attested by the moving party. The
4 nonmoving party may not merely state that it will discredit the moving party's evidence
5 at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*
6 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,
7 nonspecific statements in affidavits are not sufficient, and missing facts will not be
8 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Age Discrimination**

"We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id*.

In this case, Doty has failed to submit sufficient uncontroverted evidence to establish that age was the "but-for" cause of his termination. The Court, however, is precluded from basing its summary judgment decision on this lack of evidence. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) ("nothing in *Gross* overruled our cases utilizing [the *McDonnell Douglas*] framework to decide summary judgment motions in ADEA cases. The *McDonnell Douglas* test is used on summary judgment, not at trial.") *Gross*, however, appears to apply to a motion for judgment under Fed. R. Civ. P. 50.

Regardless, the Court will analyze the issues and evidence under the burden shifting framework of the *McDonnell Douglas* test.

Under the relevant test, Doty must first establish a *prima facie* case of age discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280–81 (9th Cir. 2000). If he is successful, the burden of production shifts to PPG to articulate a legitimate non-discriminatory reason for its adverse employment action. *Id*. at 1281. It is then Doty's task to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination. *Id*.

**1.     *Prima Facie***

A "*prima facie* case requires evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (internal quotation marks omitted) (alterations in original). The elements of a *prima facie* case alleging discriminatory termination are that Doty: (1) was at least forty years of age; (2) was performing his job satisfactorily; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *Coleman*, 232 F.3d at 1281).

In this case, the parties do not dispute that Doty was forty years of age or that he was discharged. Although Doty argues "pretext" throughout the entire "prima facie" case section of his brief, the Court assumes that Doty disputes the second and fourth elements

of the relevant test. *See* Dkt. 92 at 17–20.  With regard to whether Doty was performing his job satisfactorily, Doty has submitted sufficient evidence to raise the inference that he was performing satisfactory.  For example, Doty has submitted an uncontested spreadsheet, which is not self explanatory, that he contends shows he was a top performer in his group for late 2012 and early 2013.  Dkt. 94-22.  This is especially relevant in light of the fact that PPG removed accounts from Doty in, what Doty contends, was a setup for him to fail.  Moreover, Doty submitted a detailed response to his first PIP, which went uncontested by Doty's superiors.  PPG argues that Doty's "disagreement over the PIPs does not create a material issue of fact." Dkt. 100 at 6.  Contrary to PPG's assertion, Doty's side of the story does create material questions of fact that PPG transferred his accounts and set him up to fail because of his age.  Therefore, Doty has submitted evidence to show that he was performing his job satisfactorily.

      Next, Doty asserts that he was replaced by a substantially younger employee, 46-year old Kelly.  Dkt 92 at 20.  It is undisputed that PPG reassigned all of Doty's responsibilities to Kelly.  It is unclear whether 12 to 13 years of age difference is "substantially younger," but PPG fails to contest this issue.  PPG does argue that Kelly was only "somewhat younger," Dkt. 100 at 7 n.12, but, taking the inferences in the light most favorable to Doty, a reasonable factfinder could conclude that this age gap was substantial.

      PPG also argues that Kelly did not replace Doty.  Dkt. 84 at 9;Dkt. 100 at 7.  This argument is based on the fact that Kelly was hired in July of 2013 and Doty was terminated in November of 2013.  PPG, however, fails to show that hiring the

replacement before firing the plaintiff precludes a plaintiff from asserting he was replaced. Moreover, Knapp and Hagerty discussed terminating Doty in January 2013, six months before hiring Kelly. Therefore, taking the facts in the light most favorable to Doty, the Court concludes that Doty has shown a *prima facie* case of discrimination.

**2. Reason for Termination**

"The burden now shifts to PPG to provide a non-discriminatory explanation for its hiring decisions." *Shelley*, 666 F.3d at 609 (citing *Coleman*, 232 F.3d at 1281).

In this case, PPG asserts that "Doty was not meeting PPG's performance standards, despite PPG's repeated attempts to counsel him on these issues." Dkt. 84 at 9. The Court finds that PPG has provided a facially legitimate explanation for Doty's termination.

**3. Pretext**

PPG's articulation of a legitimate non-discriminatory reason shifts the burden back to Doty to raise a genuine factual question as to whether the proffered reason is pretextual. Doty can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Shelley*, 666 F.3d at 609 (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)).

In this case, Doty has submitted sufficient evidence to show that PPG's proffered reason is internally inconsistent and otherwise not believable. First, it is internally inconsistent to remove accounts from an employee and then simultaneously blame the

1  employee for failing to meet specific sales goals.  Doty also has submitted a spreadsheet
2  allegedly showing that he was a top performer, which undermines PPG's legitimate
3  explanation that Doty was a poor performer.
4    Second, Doty argues that PPG's failure to respond to Doty's letter with detailed
5  explanations for the accusations in the PIP remains unexplained.  Dkt. 92 at 22.  The
6  Court agrees.  While the letter does not show that any factfinder would necessarily
7  believe Doty's side of the story, a reasonable explanation would help to undermine that
8  story for the purposes of summary judgment.  Moreover, Doty was told that he
9  sufficiently completed the performance goals outlined in the PIP, yet was given a poor
10 review for 2012.  It seems internally inconsistent to inform an employee that he met
11 specific performance goals and then give that same employee a poor review.  Therefore,
12 the Court concludes that Doty has submitted sufficient evidence to overcome PPG's
13 motion for summary judgment on Doty's age discrimination claim under the ADEA and
14 the WLAD.  Accordingly, the Court denies PPG's motion on these claims.
15 **C. Retaliation**
16   To succeed on a retaliation claim, Doty must establish that: (1) he engaged in a
17 protected activity; (2) he was thereafter subjected to an adverse employment action by
18 PPG; and (3) a causal link exists between the two.  *Poland v. Chertoff*, 494 F.3d 1174,
19 1179–80 (9th Cir. 2007); *Donahue v. Cent. Wash. Univ.*, 140 Wn. App. 17, 26 (2007).
20   In this case, Doty has failed to meet his burden.  First, Doty has failed to show that
21 he engaged in a protected activity.  Doty asserts that his rebuttal to the PIP shows that "he
22 was opposing unlawful conduct because of his age." Dkt. 92 at 23.  PPG contends that an

1  objective reading of the document itself "belies the claim." Dkt. 100 at 12. The Court

2  agrees with PPG. Although Doty may have had a subjective motivation to respond

3  because he thought he was being targeted for age discrimination, the response failed to

4  put PPG on notice that Doty was contesting potential age discrimination. Doty stated that

5  he was insulted at the attacks on his work ethic and his character, Dkt. 94-16 at 5, but the

6  response does not contest any age-based attacks by PPG or its employees. Thus, Doty's

7  letter is not protected activity under the ADEA or the WLAD. *See Jurado v. Eleven-Fifty*

8  *Corp.*, 813 F.2d 1406, 1411–12 (9th Cir. 1987) (plaintiff did not oppose the contested

9  company action "as discriminatory before he was fired."); *Alonso v. Qwest Commc'ns*

10 *Co., LLC*, 178 Wn. App. 734, 754 (2013) ("A general complaint about an employer's

11 unfair conduct does not rise to the level of protected activity in a discrimination action

12 under WLAD absent some reference to the plaintiff's protected status.").

13         Second, even if his letter was a protected activity, Doty fails to show the casual

14 link between the letter and his termination. Doty fails to even address this issue in his

15 response. More importantly, Doty fails to submit any evidence to support the casual link,

16 and the Court assumes Doty relies solely on the inference of a retaliatory motive. "The

17 cases that accept mere temporal proximity between an employer's knowledge of

18 protected activity and an adverse employment action as sufficient evidence of causality to

19 establish a prima facie case uniformly hold that the temporal proximity must be 'very

20 close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v.*

21 *Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). "Action taken (as here) 20

22 months later suggests, by itself, no causality at all." *Id*. Similarly, Doty's termination

1  was almost 20 months after his letter, which does not, by itself, suggest causality.

2  Therefore, the Court grants PPG's motion on Doty's retaliation claims under the ADEA

3  and the WLAD.

4  **D.     Emotional Distress**

5        Doty has asserted claims for intentional and negligent infliction of emotional

6  distress. "To establish a tort of outrage claim, a plaintiff must show (1) extreme and

7  outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3)

8  severe emotional distress on the part of the plaintiff." *Reid v. Pierce Cty.*, 136 Wn. 2d

9  195, 202 (1998). The conduct must be "so outrageous in character, and so extreme in

10  degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

11  and utterly intolerable in a civilized community." *Id*. (quoting *Grimsby v. Samson*, 85

12  Wn.2d 52, 59–60 (1975)). "[T]he fact of the discharge itself is not sufficient to support a

13  claim of outrage. . . . It is the manner in which a discharge is accomplished that might

14  constitute outrageous conduct." *Dicomes v. State*, 113 Wn.2d 612, 630 (1989). "[M]ere

15  insults and indignities, such as causing embarrassment or humiliation, will not support

16  imposition of liability on a claim of outrage." *Id*.

17        In this case, Doty has failed to meet his burden. Doty bases part of his claim on

18  Knapp's alleged comments about firing older employees and replacing them with

19  younger employees based on age. Dkt. 92 at 24. Such insults, however, will not support

20  the imposition of liability. Doty also argues that PPG's cold and calculating manner in

21  which it strategized to eliminate him from the workplace supports his claim. Doty's

22  exaggerations do not rise to the level of outrageous conduct. In fact, Doty could have

1 been terminated in October 2012 when Knapp placed him on another PIP, and PPG's
2 placement of Doty on a PIP is also not conduct that is utterly intolerable in a civilized
3 society. Therefore, the Court grants PPG's motion on Doty's intentional infliction of
4 emotional distress claim.

5       A "defendant has a duty to avoid the negligent infliction of mental distress."
6 *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 863–64 (2000), *as amended on*
7 *reconsideration* (Feb. 29, 2000) (quoting *Hunsley v. Giard*, 87 Wn.2d 424, 435 (1976)).
8 However, "[w]hile [terminations and performance disputes] undoubtedly are stressful to
9 impacted employees, the courts cannot guarantee a stress-free workplace." *Id*. at 864
10 (quoting *Bishop v. State*, 77 Wn. App. 228, 234–35 (1995)). Thus, "absent a statutory or
11 public policy mandate, employers do not owe employees a duty to use reasonable care to
12 avoid the inadvertent infliction of emotional distress when responding to workplace
13 disputes." *Id*.

14       In this case, Doty fails to meet his burden on this claim. He fails to even address,
15 let alone show, that PPG was under a statutory or public policy mandate to not discipline
16 Doty for performance issues or terminate Doty. Therefore, the Court grants PPG's
17 motion on Doty's negligent infliction of emotional distress claim.

18       Furthermore, to the extent that Doty's emotional distress claims overlap with his
19 other discrimination claims, he is barred from asserting these claims. "Because the law
20 will not permit a double recovery, a plaintiff will not be permitted to be compensated
21 twice for the same emotional injuries." *Id*. Due to Doty's short arguments on these
22 claims, the Court is unable to determine the extent of any overlap. However, it appears

1  that the same facts support both sets of claims and these claims should be dismissed to
2  prevent double recovery.

3  **E.    Hostile Work Environment**

4       An employer is liable under the ADEA and WLAD for conduct giving rise to a
5  hostile environment where the employee proves (1) that he was subjected to verbal or
6  physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that
7  the conduct was sufficiently severe or pervasive to alter the conditions of the victim's
8  employment and create an abusive working environment. *Arizona ex rel. Horne v. Geo*
9  *Group, Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016); *Alonso*, 178 Wn. App. 734.
10 Harassment is only actionable if it is sufficiently pervasive so as to alter the conditions of
11 employment and create an abusive working environment. *Antonius v. King County*, 153
12 Wn.2d 256, 261 (2004).

13      In this case, the fundamental flaw in Doty's claim is that he was not subjected to
14 pervasive verbal discriminatory conduct altering the terms or conditions of his
15 employment. At most, he was subjected to three comments during one meeting regarding
16 his first PIP. All of the other alleged comments were directed at other employees that
17 Doty heard about. These facts and allegations do not rise to the level of a hostile work
18 environment. Therefore, the Court grants PPG's motion on Doty's hostile work
19 environment claims under the ADEA and the WLAD.

20 **F.    Defenses**

21      Doty moves for summary judgment on PPG's defenses and affirmative defenses.
22 Dkt. 81. PPG argues that (1) Doty's motion is a tardy Rule 12(f) motion, (2) Doty failed

1  to meet his burden as the moving party on summary judgment, and (3) some of the
2  defenses are no longer applicable and will be withdrawn. Dkt. 90.

3  With regard to the Rule 12(f) issue, the Court agrees with PPG. "The court may
4  strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,
5  or scandalous matter." Fed. R. Civ. P. 12(f). The Court may strike these matters on its
6  own or on a motion by the responding party within a certain time frame. *Id*. At this time,
7  any motion by Doty is late and will not be considered. Moreover, the Court declines to
8  *sua sponte* strike defenses at this point of the proceeding. In its trial brief, PPG shall
9  sufficiently support any defense it seeks to present at trial. The Court may strike
10 insufficient or redundant defenses at the pretrial conference, but, in light of this order
11 dismissing many of Doty's claims, it is unclear what defenses are insufficient or
12 redundant.

13 With regard to Doty's burden on summary judgment, the rule clearly sets forth
14 that burden. "The court shall grant summary judgment if the movant shows that there is
15 no genuine dispute as to any material fact and the movant is entitled to judgment as a
16 matter of law." Fed. R. Civ. P. 56(a). Under this rule, the "movant" must show an
17 absence of any disputed material facts. Doty has failed to do so, and, in conclusory
18 fashion argues that it is PPG's burden to show that the asserted defenses are not
19 boilerplate. Doty is wrong. Therefore, the Court denies his motion for summary
20 judgment for failing to show an absence of disputed material facts on each contested
21 defense.

22

1    With regard to PPG's concession, the Court accepts the concession and declines to
2 grant summary judgment on these defenses.  There is authority for the proposition that a
3 party may not concede claims or defenses in response to summary judgment to avoid an
4 adverse dispositive ruling.  Doty, however, has failed to either cite or address these
5 authorities, and the Court declines to *sua sponte* analyze the issues.  If necessary, the
6 Court will address the issue at a later time and consider whether to dismiss the defenses
7 with or without prejudice.  Moreover, the Court requests that PPG also consider
8 withdrawing other defenses in response to this order if the defenses relate only to claims
9 that will be dismissed.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Doty's motion for summary judgment (Dkt. 81) is **DENIED**, PPG's motion for summary judgment (Dkt. 84) is **DENIED in part** as to Doty's ADEA and WLAD claims for age discrimination, and PPG's motion is **GRANTED in part** as to Doty's other claims.

Dated this 22nd day of September, 2016.

BENJAMIN H. SETTLE
United States District Judge